UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---------------------------------x
JEFFERY MICHAEL SHOVLIN,          : Civil Action No.: _____
                                  :
                 Plaintiff,       :
                                  :
   vs.                            :
                                  :
RP ON-SITE LLC, and REALPAGE      : **COMPLAINT FOR VIOLATIONS**
INC.,                             : **OF THE FAIR CREDIT**
                                  : **REPORTING ACT AND DEMAND**
                 Defendant.       : **FOR JURY TRIAL**
                                  :
---------------------------------x

Jeffery Michael Shovlin ("Plaintiff") brings this action on an individual basis under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), seeking statutory and other damages against defendant RP On-Site LLC ("On-Site") and RealPage Inc. ("RealPage") (both collectively, "Defendants"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**PRELIMINARY STATEMENT**

1.  Defendants have failed to maintain accurate records concerning Plaintiff's background history and have falsely reported that Plaintiff was convicted of and/or pled guilty to a charge of child abuse.

2.  As a direct result of Defendants' FCRA violations, Plaintiff was denied housing and has suffered considerable stress and anguish.

3. Accordingly, Plaintiff is entitled to damages.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681p.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## PARTIES

6. Plaintiff is a natural person who resides in St. Johns County, Florida and qualifies as a "consumer" as defined and protected by the FCRA.

7. Defendant On-Site is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Defendant On-Site maintains its headquarters at 2201 Lakeside Boulevard, Richardson, Texas 75082, is authorized to conduct business in this state, regularly conducts business in this judicial district, and can be served by way of its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.

8. Defendant RealPage is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Defendant RealPage maintains its headquarters at 2201 Lakeside Boulevard, Richardson, Texas 75082, is authorized to conduct business in this state, regularly conducts business in this judicial district, and can be

served with process by way of its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.

9. Defendant On-Site is a direct subsidiary of RealPage, and, upon information and belief, worked in conjunction with RealPage to provide the background consumer reporting services at issue, as alleged herein.

## STATEMENT OF FACTS

10. This is an action to recover damages for violations of 15 U.S.C. § 1681e(b) of the FCRA.

11. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained in their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA, as follows:

> (1) The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

> (4) There is a ***need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681a (emphasis added).

12. As a part of their role as credit reporting agencies that conduct background checks on potential tenants, Defendants are meant to compile, maintain, and report accurate information concerning Plaintiff's creditworthiness, credit-standing, background, character, and general reputation.

13. The information that Defendants compile concerning Plaintiff's background is then made available for use by third parties for housing-related decision-making purposes.

14. Plaintiff has a legally protected interest in Defendants fulfilling their duties under the FCRA, so that Plaintiff's information is maintained and reported fairly, to support maximum levels of confidentiality, accuracy, and relevancy.

15. On or about December 20, 2020, Plaintiff was wrongly accused and charged with a count of child abuse.

16. On or about January 12, 2021, the Assistant State Attorney filed an "Announcement of No Information" concerning the child abuse charge, and, on that same date, the criminal matter related to the child abuse charge was dismissed.

17. In or around October and November of 2021, Plaintiff sought to move from the house in which he currently lives.

- 5 -

18. Plaintiff, who is currently separated from his wife, undergoing a divorce, and lives alone, has no reason to continue living in the four-bedroom and three-bathroom house, as he is overpaying for space he does not need.

19. Aside from the monetary disadvantage of having to pay monthly rent for an oversized home, Plaintiff would like to move out of the house, as it constantly reminds him of his relationship and experiences with his soon-to-be ex-wife.

20. In addition, Plaintiff would like to move closer to his place of employment, as the location of his current house is an approximate 40-minute commute to Plaintiff's place of employment, where Plaintiff is a general manager of a tire and automotive service center.

21. Finally, Plaintiff would like to move closer to two of his children.

22. Plaintiff began to research potential homes to rent in his price range that would be more suitable for Plaintiff, closer to Plaintiff's place of employment, and closer to his two children.

23. Based on his research, Plaintiff located a number of potential homes to rent, and identified Suncoast Property Management, LLC ("Suncoast") as the property manager for these potential home rentals.

24. On or about November 15, 2021, Plaintiff called Suncoast to inquire how to apply as a tenant, and the Suncoast representative advised Plaintiff that he

could submit a general "blanket" application for purposes of qualifying for a number of properties managed by Suncoast.

25. On or about November 15, 2021, Plaintiff submitted a general "blanket" application online, as advised by the Suncoast representative.

26. As part of the application process, Plaintiff consented to a background check that would be performed by Defendants.

27. On or about November 16, 2021, Plaintiff received an email from Suncoast stating that Suncoast denied his application based on information provided by On-Site that indicated he had an unsatisfactory credit history and a criminal record.

28. Plaintiff immediately accessed the background consumer report that On-Site had provided to Suncoast and found that Defendants had reported the criminal record related to the dismissed child abuse charge in a manner that reflected that Plaintiff had either pled guilty to felony child abuse or was found guilty of felony child abuse.

29. Plaintiff was shocked to see the manner in which Defendants reported the criminal record, as the Assistant State Attorney filed an "Announcement of No Information" concerning the child abuse charge on January 12, 2021, and, on that same date, the criminal matter related to the child abuse charge was dismissed outright.

30. At no time did Plaintiff plead guilty to child abuse, nor was Plaintiff ever found guilty of child abuse.

31. In addition, Plaintiff saw that Defendants were reporting a number of credit tradelines that did not appear to be accurately attributed to Plaintiff.

32. According to Suncoast's website (located at https://suncoastrentals.com/resident-faqs/), Suncoast requires that "[t]here can be no violent crimes in the last 7 years" for a consumer to qualify for approval as a resident for a property managed by Suncoast.

33. Accordingly, the inaccurate criminal history information that Defendants reported to Suncoast was a direct and proximate cause of Suncoast's denial.

34. On or about November 16, 2021, Plaintiff submitted a dispute to On-Site disputing the inaccurate manner in which Defendants were reporting Plaintiff's alleged criminal history.

35. In addition, on that same day Plaintiff disputed a number of tradelines that Defendants reported concerning Plaintiff's credit history as fraudulent.

36. On or about November 19, 2021, On-Site sent Plaintiff an email (the "Dispute Response Email") informing Plaintiff that, per the results of its investigation into Plaintiff's dispute, the information that Plaintiff disputed was found to be "inaccurate, incomplete, or cannot be verified."

37. The Dispute Response Email also informed Plaintiff that Defendants informed Suncoast concerning the results of their investigation.

38. Upon receipt of the Dispute Response Email, Plaintiff called Suncoast to confirm whether his application was accepted in light of the information relayed in the Dispute Response Email, and was advised by a Suncoast representative that, despite the updated information, there was nothing that could be done to change Suncoast's initial decision, and that Suncoast would not be accepting Plaintiff's application.

39. Accordingly, despite the information that Defendants reported to Suncoast in response to Plaintiff's dispute, the damage was already done.

40. As a result of Defendants' inaccurate reporting, Plaintiff suffered significant emotional distress, as Plaintiff felt that there was nothing worse than being branded a guilty child abuser.

41. This emotional distress was compounded by the fact that Plaintiff felt extremely insulted and debased when dealing with the initial child abuse charge and had thought he was able to put the issue behind him once the charge was fully dismissed, only to find that he would now have to deal with the record as if it was never dismissed.

42. In addition, subsequent to Defendants' inaccurate reporting, Plaintiff refrained from applying for housing with other potential landlords or property

management companies out of a legitimate fear of being branded a guilty child abuser once again.

43. Plaintiff is concerned that he will need to remain in the house that he is currently renting indefinitely.

44. Accordingly, as a result of Defendants' inaccurate reporting, Plaintiff (i) is now stuck overpaying for an oversized house that is an approximate 40-minute commute to his place of employment, (ii) is prevented from moving to a more convenient and cheaper location that is closer to his children, and (iii) is constantly reminded of his relationship and experiences with his soon-to-be ex-wife, from which he would like to move on.

45. In addition, Defendants' inaccurate reporting has disrupted Plaintiff's work activity, including by having a detrimental effect on Plaintiff's monthly performance, to the extent that a co-worker approached Plaintiff and told him that he was aware that Plaintiff was distracted by the child abuse reporting, but Plaintiff had to just "put [his] head down and move on."

46. Plaintiff's concerns of being continuously branded a child-abuser, being unable to move from an expensive and inconvenient housing location, and suffering from a poor work performance have all disrupted Plaintiff's sleep and Plaintiff's day to day life.

47. This harm is a direct result of the procedures that Defendants used to compile and report background information concerning Plaintiff.

48. Instead of employing reasonable procedures, as required by the FCRA, Defendants blindly collected information from unreliable third-party vendors to repackage and sell in their own background consumer reports.

49. Upon information and belief, Defendants buy consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is maximally accurate.

50. Upon information and belief, Defendants purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

51. Upon information and belief, none of Defendants' third-party vendors warrant the accuracy of the information they sell.

52. Upon information and belief, Defendants fail to exercise due diligence in ensuring they contract with reliable third-party vendors.

53. Upon information and belief, Defendants do not conduct periodic quality assurance audits to ensure that they are receiving reliable consumer information from its third-party vendors.

54. Upon information and belief, Defendants do not independently investigate the information they buy from third-party vendors before including it in consumer reports.

55. Instead, upon information and belief, Defendants have unreasonably decided that they are entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

56. Upon information and belief, Defendants have been sued under the FCRA by consumers in the past for reporting erroneous criminal records concerning consumers.

57. Therefore, Defendants have actual notice that their procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate, misleading, and incomplete consumer information.

58. Despite knowing that their procedures are unreasonable, Defendants recklessly and knowingly failed to employ procedures that assure only maximally accurate consumer information was compiled and published in their consumer reports concerning Plaintiff.

59. Defendants know that their services are used to make significant consumer decisions related to housing and can result in a consumer's tenancy application being denied.

60. The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

61. At common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

62. Defendants' violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

63. Alternatively, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

64. In any event, Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I

**Against On-Site and RealPage for Violations of the FCRA, 15 U.S.C. § 1681e**

65. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

66. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to assure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

67. In violation of § 1681e(b), Defendants failed to follow reasonable procedures to ensure maximum possible accuracy of the information attributable to Plaintiff by reporting false information concerning Plaintiff's criminal history (*i.e.,* that Plaintiff was guilty of felony child abuse).

68. Defendants' misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein, and Defendants are therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures. As a result of Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding such other relief as to this Court may seem just and proper.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

DATED: January 24, 2022

**THE CONSUMER JUSTICE LAW FIRM**

*/s/ Yosef Steinmetz*
Yosef Steinmetz, Bar No. 119968
8245 N. 85th Way
Scottsdale, AZ 85258
T: (305) 330-3750
ysteinmetz@cjl.law
*Attorney for Plaintiff*